UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA                              :
                                                      :    20 Cr. 34 (PAC)
    - against -                                       :
                                                      :    **OPINION & ORDER**
Felix Augustin Dominguez-Bido,                        :
        Defendant.                                    :
------------------------------------------------------------------X

Defendant Felix Augustin Dominguez-Bido ("Defendant" or "Dominguez-Bido") moves to dismiss his indictment charging him with one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), on the ground that the Immigration Court which ordered his removal acted without jurisdiction. For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

### I. Events Leading Up to Removal

Dominguez-Bido is a citizen of the Dominican Republic who immigrated to the United States in 1984, at the age of fourteen. (Def. Mem. at 2, ECF 35.) Upon arrival, he became a lawful permanent resident of the United States. (Gov't Opp. at 2, ECF 36.) Throughout adulthood, Dominguez-Bido has suffered from a host of serious mental health issues including "variations of schizophrenia, schizoaffective disorder, bipolar disorder, major depressive disorder, and substance abuse disorders." (Def. Mem. at 2; Wheeler Decl. Ex. L ("Psychological Report"), ECF 34.)

1

In April 2000, Dominguez-Bido pled guilty in the District of Massachusetts to charges of cocaine distribution and was sentenced to 24 months imprisonment.[1] (Def. Mem. at 2–3; Gov't Opp. at 2.) In December 2001, while in state custody for a separate drug offense, a U.S. Immigration and Customs Enforcement ("ICE") official interviewed the Defendant and served him with a Form I-862 captioned "Notice to Appear" ("2001 NTA"). (Def. Mem. at 3; Gov't Opp. at 2–3.) Based on his prior federal drug offense, the 2001 NTA charged him with removability from the United States under the immigration laws, see 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (a)(2)(B). (Def. Mem. at 3; Gov't Opp. at 3.)

Of concern, the 2001 NTA which ordered Dominguez-Bido to appear before an Immigration Court for a removal hearing failed to specify the date, time, or place of the proceeding. (Wheeler Decl. Ex. F ("2001 NTA"), ECF 34.) Instead, the 2001 NTA provided that the date and time would be "calendared" and "set," and that the address of the Immigration Court would be provided by "NOTICE SENT BY THE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW." (Id.) Attached to the 2001 NTA was a signed "Certificate of Service" verifying that the 2001 NTA had been served on the Defendant. (Id.)

In April 2004, following his release from federal custody, Dominguez-Bido was taken into ICE custody. (Def. Mem. at 4; Gov't Opp. at 4.) On May 4, 2004, the Executive Office for Immigration Review served him with a "Notice of Hearing in Removal Proceedings" ("2004 Notice") which provided the date, time, and place of the proceeding:

---

[1] The sentencing court departed from the applicable guidelines range of 46 to 57 months based on a finding of "extraordinary mental and emotional conditions." (Def. Mem. at 3, ECF 35.)

2

> You are hereby notified that a hearing in this case is scheduled before an Immigration Court on May 6, 2004 at 9:00 AM at
>
> 3400 Concord Road., Suite 2
> York, PA 17402

(Gov't Ex. B ("2004 Notice"), ECF 36.)

In addition to providing the time, date, and place of the removal hearing, the 2004 Notice also stated that the Defendant could file any papers in connection with his pending removal at the Immigration Court address provided. (*Id.*) A signed Certificate of Service attached to the 2004 Notice verified that service had been made on the Defendant. (*Id.*)

## II. Removal Hearing

On May 6, 2004, the Immigration Court held a removal hearing for the Defendant. (Def. Mem. at 4; Gov't Opp. at 5.) Because he appeared *pro se*, the Immigration Court asked: "Are you looking for a lawyer or do you want me to look today at your case without a lawyer?" (Gov't Ex. C ("Removal Hearing Tr."), at 1, ECF 36.) The Defendant responded: "I'll do it without a lawyer." (*Id.*) The Immigration Court then asked the Defendant whether he was a citizen of the Dominican Republic and whether he had been convicted in 2000 of a federal drug crime. (*Id.* at 1–2.) Dominguez-Bido conceded each of these facts. (*Id.*) Following these concessions, the Immigration Court explained to the Defendant that he was subject to mandatory removal from the United States. (*Id.* at 2 ("Mr. Dominguez, you have been convicted of a serious drug crime requiring your deportation. You are not permitted to remain in the United States .... So I'm going to apply an order of deportation to you.").) The Immigration Court, however, advised the Defendant about his right to appeal its removal order. (*Id.* at 3.) The Defendant waived his right to appeal. (*Id.*) The Immigration Court provided further guidance:

>> Okay. It's a final order then. Now, once you leave the courtroom, you can't sit there and change your mind and say maybe I should have filed an appeal. You can't do that. Once you leave the court, that's over. You understand?

(*Id.*)

Dominguez-Bido replied, "I'm ready to leave this country." (*Id.*) The Immigration Court then entered the removal order.[2] (*Id.*)

### III. Present Prosecution and Motion to Dismiss

Sometime following his removal, the Defendant returned to the United States. (Gov't Opp. at 6.) In July 2019, he was arrested in the Bronx for stabbing a victim (twice) with a knife while working at a deli. (*Id.*) The Defendant was subsequently indicted by a grand jury on one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (*Id.*)

Dominguez-Bido now moves to dismiss his indictment under Rule 12 of the Federal Rules of Criminal Procedure on the ground that the 2001 NTA's failure to provide the time, date, and place of his removal hearing divested the Immigration Court of jurisdiction to order his removal. (Def. Mem. at 1–2.) Because a valid prior removal is an element of the offense of illegal reentry, Dominguez-Bido contends that the Government cannot establish an essential element of the charged offense. (*Id.*)

The Government opposes the motion, contending that under prevailing Second Circuit caselaw, any deficiencies in the 2001 NTA were cured by service of the 2004 Notice, which supplied the time, date, and place of the Defendant's removal hearing. (Gov't Opp. at 20–24.)

---

[2] Dominguez-Bido remarks that his removal hearing was "remarkable for its brevity" and therefore procedurally deficient. (Def. Mem. at 5.) The Court rejects this characterization. The removal hearing was brief because the Defendant conceded the grounds for his removal and because he voluntarily waived his rights to legal representation and appeal. (Gov't Ex. C ("Removal Hearing Tr."), at 1–3, ECF 36.) Accordingly, to the extent that the Defendant seeks to tease out a correlation between the length of the proceeding and procedural due process, his argument is rejected.

4

Alternatively, the Government also contends that the Defendant has failed to satisfy the procedural requirements set forth under Section 1326(d), *see* 8 U.S.C. § 1326(d), and thus that he cannot collaterally challenge the removal order upon which the illegal reentry charge is predicated. (Gov't Opp. at 8–20.)

## LEGAL STANDARD

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (cleaned up). Under Rule 12(b)(3) of the Federal Rules of Criminal Procedure, a court may dismiss an indictment if it fails "to state an offense." *United States v. Taveras*, No. 20 CR. 240 (PAE), 2020 WL 7059493, at *3 (S.D.N.Y. Dec. 2, 2020). Accordingly, an indictment's failure to state an essential element of the charged offense is grounds for dismissal under Rule 12(b)(3). *Id.*; *see Smith* 985 F. Supp. 2d at 561.

"An element of the offense of illegal reentry after deportation or removal in violation of 8 U.S.C. § 1326 is that the defendant was previously deported in such a manner that complied with due process." *Taveras*, 2020 WL 7059493, at *3; *see United States v. Mendoza-Lopez*, 481 U.S. 828, 834–35 (1987). Accordingly, "[a]n alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated." *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004).

## DISCUSSION

### I. Section 1326(d) Procedural Requirements

A defendant seeking to challenge an underlying removal order upon which his illegal reentry charge is predicated must first satisfy the procedural requirements contained in Section 1326(d). *See* 8 U.S.C. § 1326(d). Section 1326(d) states that:

> An alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Because the Second Circuit has found Section 1326(d)'s requirements to be conjunctive, a defendant "must establish all three [factors] in order to succeed in his challenge to his removal order." *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

As a preliminary matter, Dominguez-Bido argues that he does not need to satisfy Section 1326(d)'s procedural requirements because his collateral challenge is directed at the jurisdiction of the Immigration Court. (Def. Mem. at 21.) He contends that jurisdictional challenges are "of a different character" and therefore excused from procedural requirements because without proper jurisdiction vested in the Immigration Court, "there simply is no removal order to collaterally attack." (*Id.* at 22) (emphasis omitted).

This argument must be rejected for two reasons. *First*, as discussed below, the Immigration Court did act with proper jurisdiction in ordering the Defendant's removal. *See infra* 11–14. *Second*, the text of Section 1326(d) does not carve out an exception for

6

jurisdictional challenges. *See* 8 U.S.C. § 1326(d). Rather, it is clear as it is categorical that "an alien may not challenge the validity of the deportation order" unless its requirements are met. *Id.*; *Taveras*, 2020 WL 7059493, at *3. Indeed, as the overwhelming weight of authorities confirms, Section 1326(d) has been applied to collateral challenges of all stripes. *Taveras*, 2020 WL 7059493, at *3 (collecting cases). Accordingly, the Court concludes that the Defendant must satisfy the Section 1326(d) factors in order to collaterally attack his removal order.

### A. *Administrative Exhaustion*

The parties do not dispute that Dominguez-Bido waived his right to appeal the Immigration Court's removal order to the Board of Immigration Appeals (BIA), as required by Section 1326(d)(1). Dominguez-Bido, however, contends that the exhaustion requirement should be excused in this case because the Immigration Court acted without jurisdiction, and because he did not knowingly and intelligently waive his right to appeal. (Def. Mem. at 22–23.) Neither argument is persuasive.

*First*, the Defendant's jurisdictional argument must be rejected because the Immigration Court acted with proper jurisdiction in ordering removal. *See infra* 11–14.

*Second*, in regard to the claim that waiver was not knowingly and intelligently entered, the Government's response is correct: "there is simply no evidence" on the record demonstrating that Dominguez-Bido was compromised by a lack of representation or mental illness at his removal hearing. (Gov't Opp. at 19.) Instead, what the record reveals is that the Immigration Court carefully advised Dominguez-Bido about his right to legal representation,[3] but that he

---

[3] The Immigration Court advised, "Mr. Dominguez, you have a right to be represented by a lawyer at no expense to our Government. It's your responsibility to find a lawyer if you want one. Do you understand that?" (Removal Hearing Tr. at 1.) After the Defendant declined to seek legal representation, the Immigration Court followed up: "Are you looking for a lawyer or do you want me to look today at your case without a lawyer?" (*Id.*)

7

nevertheless expressed his desired to go it alone without a lawyer. (Removal Hearing Tr. at 2.) Accordingly, Dominguez-Bido cannot now argue that his appellate waiver should be avoided on the basis that he lacked legal representation.

Nor is there any evidence showing that Dominguez-Bido suffered from a debilitating mental illness that deprived him of the ability to meaningfully assess the consequences of waiving appeal. While it may be true that Dominguez-Bido has suffered from mental health issues throughout adulthood, (*see* Psychological Report), the dispositive inquiry is whether he was mentally compromised *at his removal hearing when he forewent appeal*. And on that score, the record reflects no indicia of mental incapacitation. (*See generally* Removal Hearing Tr.) Accordingly, the Court finds that the administrative exhaustion requirement has not been met. *See United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004) ("Statutory exhaustion requirements such as Section 1326(d)(1) are mandatory, and courts are not free to dispense with them.") (cleaned up).

In reply, Dominguez-Bido insists that his appeal waiver was not knowingly and intelligently entered because the Immigration Court failed to advise him about a potentially meritorious defense against removal. (Reply at 10–11, ECF 37.) According to Dominguez-Bido, the Immigration Court should have advised him about the jurisdictional challenge underlying this motion, and because it did not, his waiver of appeal cannot be deemed to be knowing and intelligent. (*Id.*) To buttress this claim, he cites a trio of Second Circuit decisions that found that an alien did not knowingly and intelligently waive appeal where an immigration court failed to advise him about his right to seek discretionary waiver of deportation under Section 212(c) of the former Immigration and Nationality Act. *United States v. Sosa*, 387 F.3d

131, 134–35 (2d Cir. 2004), *United States v. Calderon*, 391 F.3d 370, 373–74 (2d Cir. 2004); *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004).

These precedents are inapposite to the case at bar. As Judge Engelmayer aptly noted in *Taveras*, these Second Circuit precedents "addressed a situation far afield from that here." *Taveras*, 2020 WL 7059493 at *11. "At the time of *Copeland*, *Calderon*, and *Sosa*, the right to a Section 212(c) hearing was well established and mandatory, and under governing regulations, an immigration judge was required to inform an eligible alien of his or her right to a Section 212(c) hearing." *Id.* (cleaned up). Accordingly, an immigration court's failure to advise an alien about Section 212(c) relief rendered the alien's waiver of appeal "not knowing and intelligent." *Id.*

Here, in contrast, Dominguez-Bido cannot demonstrate that the jurisdictional challenge he raises in this motion is "well established and mandatory" such that the Immigration Court's failure to inform him of it (nearly twenty years ago, no less) caused his waiver to be not knowing and intelligent. Indeed, far from being well established or mandatory, the Defendant's jurisdictional challenge *cannot succeed* under controlling Second Circuit caselaw. *See infra* 11–14. Therefore, the Court concludes that the Immigration Court did not act improperly in not advising Dominguez-Bido about this defense.

### B. *Opportunity for Judicial Review*

The second factor under Section 1326(d) requires the Defendant to prove that "the deportation proceedings at which the [removal] order was issued improperly deprived the alien of the opportunity for judicial review." *See* 8 U.S.C. § 1326(d)(2). Here, Dominguez-Bido reuses the same arguments made on the exhaustion factor: that he did not knowingly and intelligently waive appeal. (Def. Mem. at 22.) Although the Second Circuit has instructed that "[w]here a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity

9

for judicial review," *Copeland*, 376 F.3d at 68 n.6, for the reasons provided above, the Court finds that the Defendant's decision to waive appeal was knowingly and intelligently made. Accordingly, the Defendant has not satisfied the second factor under Section 1326(d).

### C. *Fundamental Unfairness*

The third factor under Section 1326(d) requires Dominguez-Bido to prove that the entry of his removal order was "fundamentally unfair." *See* 8 U.S.C. § 1326(d)(3). To demonstrate this factor, he must show "both a *fundamental procedural error* and *prejudice* resulting from that error." *Fernandez-Antonia*, 278 F.3d at 159 (emphasis added). Prejudice exists where "there is a reasonable probability that, but for the unprofessional errors" the alien would not have been removed. *United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006). In other words, the Court must envision "a procedurally perfect proceeding" and ask if the Defendant would have still been reasonably likely to avoid removal. *Fernandez-Antonia*, 278 F.3d at 159.

Because Dominguez-Bido can neither show fundamental procedural error nor prejudice, he cannot establish the third factor under Section 1326(d). *First*, there was no jurisdictional defect in the removal proceeding, *see infra* 11–14, so there was no procedural error.

*Second*, assuming arguendo that the 2001 NTA's omission of time, date, and place divested the Immigration Court of jurisdiction, Dominguez-Bido still cannot show prejudice. *Fernandez-Antonia*, 278 F.3d at 159. At the time of his removal proceeding in 2004, Dominguez-Bido was subject to mandatory deportation because he was an alien who had committed a serious federal crime (the 2000 drug conviction) in the United States. Thus regardless of whether or not a more detailed NTA had been served, he was subject to mandatory removal, *see* 8 U.S.C. §§ 1227(a)(2)(A)(iii) and (a)(2)(B), which means that he cannot demonstrate prejudice under Section 1326(d)(3). *Fernandez-Antonia*, 278 F.3d at 159.

10

In conclusion, Dominguez-Bido has not satisfied the procedural requirements set forth in Section 1326(d). Accordingly, he cannot challenge the validity of his removal order upon which his illegal reentry charge is predicated and his motion to dismiss must be denied.

## II.    Merits of the Jurisdictional Challenge

Even if the Court were to entertain the merits of Dominguez-Bido's jurisdictional challenge, the claim would fail under Second Circuit caselaw. The merits question at issue is: Did the 2001 NTA's failure to mention the time, date, and place of Dominguez-Bido's removal hearing divest the Immigration Court of jurisdiction to order his removal?

Under applicable federal regulations, jurisdiction vests in an immigration court "when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The Second Circuit has recognized that a notice to appear, such as the 2001 NTA, qualifies as a "charging document." *Banegas Gomez v. Barr*, 922 F.3d 101, 111 (2d Cir. 2019). And Section 1003.18(b) states that for an NTA to constitute a *valid* charging document—capable of vesting jurisdiction in an immigration court—it must contain "the time, date, and place of a hearing only '*where practicable.*'" *Id.* (quoting 8 C.F.R. § 1003.18(b) (emphasis in original)).

In the formative case, *Banegas Gomez v. Barr*, 922 F.3d at 101, the Second Circuit confronted the question of whether an NTA that failed to mention the *time* and *date* of a removal hearing divested an immigration court of jurisdiction. *Id.* at 110–11. Relying on the "where practicable" clause of Section 1003.18(b), the court held that "an NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 112.

11

Applying *Banegas Gomez*, the Court must reject Dominguez-Bido's argument that the 2001 NTA's failure to mention the time and date divested the Immigration Court of jurisdiction. While the 2001 NTA did not provide the time and date of the Defendant's removal hearing, the follow-up 2004 Notice cured these deficiencies, and that was enough, under *Banegas Gomez*, to vest jurisdiction in the Immigration Court. 922 F.3d at 112.

Unable to distinguish *Banegas Gomez*, the Defendant devotes several pages to arguing that the precedent was erroneously decided. (Def. Mem. at 16–21.) But this Court cannot overrule binding Second Circuit precedent, so arguments to the contrary must be cast aside.

Separately, Dominguez-Bido also argues that the 2001 NTA's failure to provide the *place* of the removal hearing divested the Immigration Court of jurisdiction.[4] (Def. Mem. at 9–15.) While *Banegas Gomez* did not squarely address this issue (the NTA there contained the address of the immigration court), *see* 922 F.3d at 112, the Court concludes that *Banegas Gomez*'s reasoning also forecloses this claim.

*First*, in reaching the conclusion that an NTA's time and date omissions could be cured by subsequent notice, the *Banegas Gomez* court relied heavily on Section 1003.18(b), which states that an NTA must "contain the time, date, and place of a hearing '*where practicable*.'" 8 C.F.R. § 1003.18(b). Notably, Section 1003.18(b) treats *time*, *date*, and *place* equally in that all three terms can be excused from inclusion in the NTA where it is impracticable to include them. *Id.* Accordingly, given this parallel treatment under Section 1003.18(b), the Court is not

---

[4] Dominguez-Bido argues that there were really two *place* deficiencies in the 2001 NTA: (1) its failure to specify the address of the removal hearing and (2) its failure to specify the address of the place where removal papers had been filed. (Def. Mem. at 15.) This argument, however, slices the baloney too thin: the removal hearing and the place where removal papers had been filed shared the same location—the Immigration Court. Accordingly, the 2004 Notice cured both alleged defects in one stroke by providing the address of the Immigration Court. (*See* 2004 Notice.)

12

persuaded that *time* and *date* information may be cured by subsequent notice under *Banegas Gomez*, but that *place* information could not be.

*Second*, to treat *place* differently from *date* and *time* would, as Judge Engelmayer noted in *Taveras*, render another provision in Section 1003.18(b) "nugatory." *Taveras*, 2020 WL 7059493, at *8. A separate provision under Section 1003.18(b) instructs that if "the time, place and date of the initial removal hearing" are missing from the initial NTA, then the "Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18(b). This provision thus expressly contemplates the situation that arose in this case: where the initial NTA did not contain the date, time, and place of the removal hearing. *See id.* It also provides the remedy: it instructs the Immigration Court to serve a subsequent notice that provides the alien with the missing information, *see id.*, which is indeed precisely what occurred here. The Court therefore concludes that the 2004 Notice cured the 2001 NTA's notice deficiencies and vested the Immigration Court with jurisdiction to order the Defendant's removal.[5]

The Defendant's reliance on *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202 (E.D.N.Y. 2020), is misplaced. In *Benitez-Dominguez*, Judge Garaufis dismissed an indictment charging the defendant with illegal reentry because the initial NTA did not contain the time, date,

---

[5] The Defendant references Section 1003.15(b)(6), which states that a "Notice to Appear" must include, among other things, "The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b)(6). According to Dominguez-Bido, time and date are not included within this list—while *place* is—therefore making its inclusion in the NTA non-optional for jurisdiction to vest. (Def. Mem. at 12–13.) The Court, however, is unpersuaded. As other courts have concluded, Section 1003.15(b)(6) must be read in conjunction with Section 1003.18(b) – which, for the reasons discussed, only requires the NTA to contain information regarding time, date, and place "where practicable." *Taveras*, 2020 WL 7059493, at *8; *see also Aguilar Fermin v. Barr*, 958 F.3d 887, 894 (9th Cir. 2020) (concluding that Section 1003.15(b)(6) must be read in conjunction with Section 1003.18(b)).

13

and place of the removal hearing. *Id.* at 211. Unlike this case, the defendant *never* received a subsequent notice of hearing that cured the initial defects in the NTA. *Id.* at 209. Hence, Judge Garaufis concluded that *Banegas Gomez* did not apply and that the illegal reentry charge had to be dismissed.[6] *Id.* at 211.

*Benitez-Dominguez*, however, is far afield from this case because Dominguez-Bido was provided with a subsequent notice of hearing (the 2004 Notice) that spelled out the time, date, and place of his removal proceeding. (*See* 2004 Notice.) Thus any jurisdictional defects caused by the 2001 NTA were cured by service of the 2004 Notice.[7] *See Banegas Gomez*, 922 F.3d at 112.

In conclusion, the Court finds that the Immigration Court acted with proper jurisdiction in ordering the Defendant's removal from the United States in 2004. Because his removal was proper, the Defendant's motion to dismiss his indictment must be denied.

---

[6] Dominguez-Bido cites several decisions by district courts in California in support of his position. But as he himself points out, these decisions have been abrogated by the Ninth Circuit's recent ruling in *Aguilar-Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020), which endorsed this Court's conclusion. *Id.* at 895 ("Given that the regulations expressly state that the omission of an address from an NTA may be fixed by a later hearing notice, it is reasonable to construe the regulatory provisions about when jurisdiction vests as allowing the IJ to assert jurisdiction in such circumstances."). Thus *Aguilar-Fermin* lends direct support for the Court's conclusion.

[7] While Judge Garaufis did state in dicta that a subsequent notice would have been insufficient to cure the omission of *place* in the NTA, the Court agrees with the *Taveras* court that this reasoning is "unpersuasive." *Taveras*, 2020 WL 7059493, at *8. Put simply, Section 1003.18(b) states that a valid NTA must contain the time, date, and place of the removal hearing "where practicable." 8 C.F.R. § 1003.18(b). And relying on Section 1003.18(b), *Banegas Gomez* concluded that *time* and *date* could be cured by subsequent notice. Accordingly, there is simply no reason to believe that *place* could not be cured in the same way as well.

## CONCLUSION

For the foregoing reasons, the Defendant's motion is **DENIED**. The parties are directed to meet and confer, and provide an update to the Court by April 16, 2021 on whether the Defendant will plead guilty or proceed to trial.

Dated: New York, New York
      March 17, 2021

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge